# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

KRISTA MCGOWAN,

     Plaintiff,

v.                                                                       Case No. 6:23-cv-96-RBD-RMN

AAR GOVERNMENT SERVICES,
INC.,

     Defendant.

_____

## ORDER

Before the Court is Defendant AAR Government Services, Inc.'s ("AGS")

motion for summary judgment. (Doc. 25.) The Court orally granted the motion at

the pretrial conference for the following reasons.

## BACKGROUND

Beginning in 2018, Plaintiff Krista McGowan worked as a technical librarian

who was regularly deployed to Afghanistan for AGS, a government contractor

transporting personnel to and from the U.S. Embassy, and there for the

State Department. (Doc. 25-1, ¶¶ 4, 5, 8, 9, 11, 12.) U.S. troops were anticipated to

withdraw from Afghanistan by August 31, 2021. (*Id.* ¶ 13.) That summer, Taliban

forces were expanding control in Afghanistan, raising security concerns around

the embassy in the time leading up to McGowan's last deployment. (*Id.*)

On July 14, McGowan touched down in Afghanistan. (Doc. 25-3, p. 92:9–11.) On July 23, the State Department gave AGS a list of roles, including McGowan's, to move out of Afghanistan due to security concerns. (Doc. 25-1, ¶ 14.) On July 29, AGS evacuated McGowan and others back to the U.S. (*Id.*) On August 2, McGowan, who had been feeling ill since she got to Afghanistan, went to the emergency room and was diagnosed with blood clots in her lungs. (Doc. 25-3, pp. 92:19–23, 123:4–124:3.) She was discharged with surgery to follow, and AGS put her on medical leave. (*Id.* at 124:15–17 & Ex. p. 150.)

On August 15, the Taliban entered Kabul, the Afghan president fled the country, and the embassy was evacuated. (Doc. 25-1, ¶ 15.) On August 18, AGS's contract was terminated.[1] (*Id.* ¶ 17.) On August 24, AGS held a mass offboarding meeting, which McGowan attended remotely. (*Id.* ¶¶ 19–20.) AGS then implemented a reduction-in-force, eliminating about 200 positions, including McGowan's. (*Id.* ¶¶ 22, 24.) McGowan was one of eight employees who was terminated while on leave. (*Id.* ¶¶ 31–32.) McGowan's notice of termination was effective September 23. (Doc. 25-2, p. 10.) Her surgery took place the next day. (Doc. 25-3, pp. 139:24–140:2, 165:13–15.) Many of the terminated employees were later rehired—including three of the eight terminated on leave—but McGowan

---

[1] McGowan conclusorily disputes the date of the contract's termination, but she provides no contrary evidence. (Doc. 26, p. 4.)

did not apply for rehire.[2] (Doc. 25-1, ¶¶ 29, 32; Doc. 25-3, p. 161:16–17.)

So McGowan sued AGS for: (1) interference under the Family and Medical Leave Act ("FMLA"); (2) retaliation under the FMLA; (3) discrimination under the Americans with Disabilities Act ("ADA"); (4) retaliation under the ADA; and (5) retaliation under the Employee Retirement Income Security Act ("ERISA"). (Doc. 1.) AGS then moved for summary judgment. (Doc. 25.) McGowan opposed. (Doc. 26; *see* Doc. 27.) The Court heard argument on the motion at the pretrial conference and orally granted it for the reasons below. (*See* Doc. 35.)

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006). Then the Court must decide whether there is "sufficient disagreement to require

---

[2] McGowan asserts that she did not apply for rehire because her separation contract said she was ineligible and her supervisor did not encourage her to apply. (Doc. 25-3, pp. 160:19–161:17.) AGS counters that her separation contract had a provision marked "optional depending on circumstances" stating ineligibility for rehire, but that it was left in McGowan's and all other employees terminated by the reduction-in-force by mistake, as it applied only to employees terminated for cause. (Doc. 25-2, ¶¶ 19–20.) AGS asserts that all employees terminated by the reduction-in-force were considered eligible for rehire, all were encouraged in their termination notice to apply for rehire, and many were rehired. (*Id.* ¶¶ 21–22 & Ex. p. 13.) McGowan did not provide any documentary evidence to the contrary, nor did she provide any testimonial evidence from her supervisor.

submission to a jury." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (cleaned up).

## ANALYSIS

### I.     FMLA

McGowan brings two FMLA claims: interference (Count I) and retaliation (Count II). (Doc. 1.) The Court takes each in turn.

First, AGS argues that it would have terminated McGowan regardless of her leave status due to the reduction-in-force, so she cannot show that AGS interfered with her FMLA[3] rights. (Doc. 25, pp. 11–12.) McGowan counters that the close temporal proximity between her termination and her surgery establishes a prima facie case of interference. (Doc. 26, p. 12.) Her counsel confirmed at the hearing that their whole theory of the case relies on this temporal proximity. (*See* Doc. 35.)

"To prove FMLA interference, an employee must demonstrate that [s]he was denied a benefit to which [s]he was entitled under the FMLA." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1266–67 (11th Cir. 2008). There is no interference "if the employee would have been dismissed regardless of any request for FMLA leave." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir.

---

[3] AGS also argues that the FMLA does not apply to McGowan because her work under the contract took place outside the U.S., but it cites no in-Circuit case law for that proposition. (Doc. 25, p. 10.) The Court need not resolve this argument because even assuming the FMLA applies, McGowan's claims under it fail as a matter of law.

2010).

Here, the Afghanistan contract was ending due to well-publicized events. Hundreds of others were being terminated within a month of the contract's end (both those on leave and those who were not), and other people who were terminated while on leave were subsequently rehired for other contracts. (*See* Doc. 25-1, ¶¶ 17–24, 32; Doc. 25-2, p. 13.) So, the overwhelming record evidence establishes that AGS terminated McGowan because of a reduction in force, not because of her medical leave, and she offers no evidence to support the claim. *See, e.g., Lapham v. Walgreen Co.*, 88 F.4th 879, 896–97 (11th Cir. 2023) (summary judgment for employer appropriate where the employee did not meaningfully rebut employer's overwhelming evidence of termination for reasons unrelated to FMLA); *Creech v. Tift Reg'l Hosp. Auth.*, No. CIV.A.7:09-CV027, 2010 WL 3851400, at *2 (M.D. Ga. Sept. 28, 2010) (summary judgment for employer appropriate where employee's position was eliminated due to reorganization).

Given the absence of a genuine dispute of material fact about why AGS terminated McGowan, AGS did not interfere with her FMLA rights as a matter of law. So AGS is entitled to summary judgment on the interference claim.

McGowan's overarching temporal proximity argument goes more to the retaliation claim rather than interference. (*See* Doc. 26, pp. 13–14.) But it does not help her there, either, as temporal proximity alone is not enough to carry her

burden. (*See* Doc. 27, p. 3.)

FMLA retaliation claims supported by only circumstantial evidence[4] are considered under the burden-shifting *McDonnell Douglas* framework. *Lapham*, 88 F.4th at 890 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, the plaintiff must establish a prima facie case by showing that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there is a but-for causal connection between the two. *Id.* at 890, 893. Then the burden shifts to the defendant to offer a legitimate reason for the action, and then it shifts back to the plaintiff to show that reason is pretext. *Id.*

The sole evidence that McGowan relies on to show that taking leave caused her termination is that she was terminated the day before her surgery. (Doc. 26, p. 14.) But again, the overwhelming record evidence establishes that her termination was solely caused by the reduction in force affecting hundreds of others, which was announced at a meeting a month before this specific termination date and based on well-publicized global events outside of AGS's control—not by McGowan needing leave for surgery. (*See* Docs. 25-1, 25-2; Doc. 25-3, pp. 133:24–134:7); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1083–84 (11th Cir. 1990) (in ADEA context, employee failed to establish prima facie case where reduction-in-

---

[4] McGowan points to no direct evidence. (*See* Doc. 26, pp. 13–14.)

force was cause of termination). And even if temporal proximity alone were enough to sustain her prima facie burden, it is unquestionably not enough to show that AGS's proffered reason for her termination was pretextual. *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1138 n.15 (11th Cir. 2020) (in Title VII context,[5] holding that "[w]hile close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient"). Indeed, the undisputed evidence shows that the employees who were terminated while on leave alongside McGowan on September 23 actually got a few weeks' reprieve; an earlier wave of the reduction terminated nearly half the employees on September 3, but AGS's human resources department took the extra time to compile resources about their benefits for the employees being terminated while on leave. (*See* Doc. 25-2, ¶¶ 14–15.) This fact, coupled with the fact that other employees were also terminated the same day as McGowan, dispels any notion that the particular date of her termination was a pretext for retaliating against her personally. (*See id.*) And the fact that other employees terminated on leave were subsequently rehired dispels any notion that her termination was targeted because of her leave status generally. (*See* Doc. 25-1, ¶ 32.)

---

[5] Claims under the FMLA are construed in the same manner as Title VII. *See Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1280 (11th Cir. 2020).

With the dearth of evidence offered by McGowan, there is no genuine dispute of material fact that her termination was caused by the legitimate reduction-in-force, not as retaliation for her taking medical leave. So AGS is entitled to summary judgment on the FMLA retaliation claim.

## II.   ADA

Next, McGowan brings two claims under the ADA: discrimination (Count III) and retaliation (Count IV). (Doc. 1.)

The Court takes up the ADA retaliation claim first as it is easily resolved. This claim relies on the same foundation as the FMLA retaliation claim and thus also fails as a matter of law. (*See* Doc. 26, p. 17 (acknowledging claim is based on temporal proximity)); *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (prima facie case of ADA retaliation has same elements as FMLA retaliation and requires but-for causation); *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1124 (11th Cir. 2023) (temporal proximity alone not enough to show pretext for ADA claim).

The same *McDonnell Douglas* burden-shifting framework applies to the ADA discrimination claim. *See Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024); *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).[6] To establish a

---

[6] The Eleventh Circuit recently noted that the mixed-motive theory permitted for Title VII discrimination claims—which was announced in *Quigg v. Thomas County School District*, 814 F.3d 1227 (11th Cir. 2016), and is not considered under the *McDonnell Douglas* framework—does not apply to ADA discrimination claims. *See Akridge*, 93 F.4th at 1193. In any event, McGowan only relies on a single-motive theory predicated on *McDonnell Douglas*. (Doc. 26, p. 15.)

prima facie case of ADA discrimination under this framework, a plaintiff must show that she was: (1) disabled; (2) qualified; and (3) subjected to unlawful discrimination on the basis of her disability. *See Batson v. Salvation Army*, 897 F.3d 1320, 1326 (11th Cir. 2018). The third prong requires but-for causation. *Akridge*, 93 F.4th at 1192–94. Two ways to prove the third prong are failure to accommodate and disparate treatment. *See Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1261–62 (11th Cir. 2007). McGowan proceeds under both theories. (*See* Doc. 26, pp. 14–16.)

As for failure to accommodate, McGowan argues that the reasonable accommodation for her disability (her lung condition) was retaining her as an employee rather than terminating her. (*Id.* at 15.) But this argument cannot form the basis for a failure to accommodate claim, as it would essentially mean an employer could never terminate an employee on leave for legitimate business reasons. *See Velez v. Sprint/United Mgmt. Co.*, No. 6:19-cv-987, 2020 WL 8224605, at *2 & n.2 (M.D. Fla. Dec. 15, 2020) (Presnell, J.). Here, AGS accommodated McGowan's request for medical leave. (Doc. 25-3, Ex. p. 150.) No requested accommodation was denied for discriminatory reasons;[7] she was simply terminated for legitimate business reasons due to the reduction in force. (*See*

---

[7] To the extent McGowan argues that AGS should have investigated whether she could continue to work for the company in some capacity under her health restrictions, this argument cannot form the basis for a failure to accommodate claim. (Doc. 26, pp. 15–16); *see Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997).

Docs. 25-1, 25-2); *Batson*, 897 F.3d at 1326 (no failure to accommodate where employee returned from leave to be terminated when position was eliminated and employee offered no evidence that request for accommodation was denied); *Velez*, 2020 WL 8224605, at *2 (terminating employee while on leave did not constitute failure to accommodate). So McGowan cannot establish a prima facie case of failure to accommodate.[8]

As for disparate treatment, AGS argues that McGowan cannot show she was treated differently than similarly situated non-disabled employees. (Doc. 25, p. 20); *see Akridge*, 93 F.4th at 1194. Though McGowan counters in conclusory fashion that she can point to such a comparator, she does not provide any evidence supporting this assertion or even name anyone in particular. (Doc. 26, p. 16.) An appropriate comparator must be "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1229 (11th Cir. 2019). Without naming a comparator, the Court cannot evaluate whether these mystery people McGowan cites were treated better than she was. *See Smith v. Acting Sec'y, DHS*, 819 F. App'x 774, 777 (11th Cir. 2020) (citing *Lewis*, 918 F.3d at 1227–28) (comparator must have engaged in the same conduct, been subject to the same policy, and shared the same supervisor and employment history). And in fact, the evidence actually shows that the people

---

[8] Because this claim fails on the merits, the Court need not resolve AGS's argument that the failure to accommodate is outside the scope of McGowan's EEOC charge. (Doc. 25, p. 14.)

who were not on leave were treated worse, not better, because they were let go

earlier—whereas McGowan and others on leave were given a few extra weeks so

HR could compile their benefits resources. (*See* Doc. 25-2, ¶¶ 14–15.) So McGowan

cannot establish a prima facie case of disparate treatment.[9] And even if she could

meet that initial burden, she cannot show pretext, given the overwhelming

evidence that AGS undertook the reduction-in-force for legitimate non-

discriminatory reasons and McGowan's failure to put on any evidence to rebut it.

(*See* Docs. 25-1, 25-2); *e.g., Akridge*, 93 F.4th at 1196–97; *Graves*, 67 F.4th at 1123–24;

*Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376–78 (11th Cir. 1996).

Because McGowan did not carry her burden on either failure to

accommodate or disparate treatment, AGS is entitled to summary judgment on

the ADA discrimination claim.

### III.    ERISA

---

[9] To the extent McGowan need not identify a similarly situated comparator because she was terminated as a result of a reduction in force—an argument she does not articulate (*see* Doc. 26, p. 16)—she must instead make out a prima facie case by showing she was qualified to assume another position at the time of her termination and AGS denied her the position for discriminatory reasons. *See Crisman v. Fla. Atl. Univ. Bd. of Trustees*, 659 F. App'x 572, 578–79 (11th Cir. 2016) (citing *Jameson v. Arrow Co.*, 75 F.3d 1528 (11th Cir. 1996)) (assuming without deciding that employee laid off in reduction-in-force need not show similarly situated comparator). Though there was an open librarian position for AGS's Iraq contract when the Afghanistan contract ended, McGowan admits that she was not qualified for it because it must be performed in-country, which she could no longer do. (Doc. 25-2, ¶¶ 16–17; Doc. 25-3, pp. 158:14–159:9.) And on this record, no reasonable factfinder could conclude that AGS intended to discriminate against McGowan in not rehiring her. (*See* Docs. 25-1, 25-2); *Crisman*, 659 F. App'x at 578–80; *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344–46 (11th Cir. 2003).

Finally, McGowan brings one claim for violation of her ERISA rights (Count V). (Doc. 1.) This claim relies on the same foundation as the others and thus fails as a matter of law for the same reasons. (*See* Doc. 26, pp. 17–18 (acknowledging claim is based solely on temporal proximity)); *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223–24 (11th Cir. 1993) (ERISA claim is subject to *McDonnell Douglas* burden-shifting framework and requires circumstances giving rise to inference of discrimination such that interference with ERISA rights was a motivating factor). So AGS is entitled to summary judgment on the ERISA claim.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1.    AGS's motion for summary judgment (Doc. 25) is **GRANTED**.

2.    AGS's motion in limine (Doc. 32) is **DENIED AS MOOT**.

3.    The Clerk is **DIRECTED** to enter judgment in favor of Defendant AGS and against Plaintiff McGowan and then to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 1, 2024.



ROY B. DALTON, JR.
United States District Judge